UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOHN CONTI, on behalf of himself and all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) C.A. No. 1:21-CV-00296-MSM-PAS<br>) |
| CITIZENS BANK, N.A. and DOES 1 through 10, inclusive, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

This matter raises the question of whether a national bank—here, defendant Citizens Bank, N.A. ("Citizens")—is subject to a state statute that requires a lender's payment of interest on a mortgage escrow account or whether, as to national banks, the state statute is preempted by the National Bank Act ("NBA"). The plaintiff, John Conti, brings this putative class action against Citizens, his mortgage lender, for failure to pay that interest on his escrow account. Citizens moves to dismiss the matter on the grounds of federal preemption.

For the following reasons, the Court GRANTS Citizens' Motion (ECF No. 15).

### I.   BACKGROUND

In July 2011, the plaintiff, John Conti, purchased a residential property in Cranston, Rhode Island. (ECF No. 1 ¶ 16.) Mr. Conti financed the purchase with a loan from Citizens, which was secured by a mortgage on the property. *Id.* Mr. Conti

1

makes no allegation that this mortgage was a jumbo loan or was made, guaranteed, or insured by a state or federal governmental lending or insuring agency.

As a condition of the mortgage loan, Citizens required Mr. Conti to make advance payments of municipal property taxes and homeowner's insurance into an escrow account.[1] The mortgage agreement between Citizens and Mr. Conti provided that, "Unless an agreement is made in writing or Applicable Law requires interest to be paid on the [Escrow] Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds." *Id.* ¶ 31. The mortgage agreement defined "Applicable Law" as "all controlling federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions."[2] (ECF No. 18-1 at 3.)

Rhode Island law, subject to certain exceptions not relevant here, requires banks to pay interest on amounts that customers deposit into mortgage escrow accounts. R.I.G.L. § 19-9-2(a). Having not received interest payments from Citizens on his escrow account, the plaintiff filed this action alleging breach of contract and, in the alternative, unjust enrichment.

Citizens, however, being a national bank chartered under the National Bank

---

[1] An escrow account is "[a]n account of accumulated funds held by a lender for payment of taxes, insurance, or other periodic debts against real property." *Account*, Black's Law Dictionary (11th ed. 2019).

[2] Although the mortgage agreement is not a part of the pleadings, the Court may consider it at this motion to dismiss stage because it is referenced in the Complaint and because it is a public record. *See Wilson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 4 (1st Cir. 2014) (holding that the court may consider on a motion to dismiss "information found in the mortgage itself, public records, documents incorporated into the complaint by reference, and other matters susceptible to judicial notice").

Act, seeks to dismiss the action, arguing that any state statute requiring it to pay interest on escrow accounts is preempted by the National Bank Act. Preemption issues "are ones of law, not of fact, and are amenable to resolution by a motion to dismiss the complaint." *Fitzgerald v. Harris*, 549 F.3d 46, 52 (1st Cir. 2008).

## II.   MOTION TO DISMISS STANDARD

Motions to dismiss on preemption grounds are considered under Fed. R. Civ. P. 12(b)(6). *Fitzgerald*, 549 F.3d at 52. To survive a motion to dismiss, the complaint must state a claim plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court assesses the sufficiency of the plaintiff's factual allegations in a two-step process. *See Ocasio-Herandez v. Fortuno-Burset*, 640 F.3d 1, 11-13 (1st Cir. 2011). "Step one: isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). "Step two: take the complaint's well-pled (*i.e.,* non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Id.* "The relevant question … in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007)).

3

### III.   DISCUSSION

#### A. The National Bank Act, 12 U.S.C. § 1 *et seq.*

The National Bank Act, passed in 1864, created a national banking system and established the Office of the Comptroller of Currency ("OCC") to charter, regulate, and oversee national banks. *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 6 (2007). The NBA created a "dual banking system," under which banks can be chartered and regulated under federal or state law. *Lacewell v. OCC*, 999 F.3d 130, 135 (2d Cir. 2021). "While state banks are organized under state law, '[n]ational banks are instrumentalities of the Federal government, created for a public purpose, and as such necessarily subject to the paramount authority of the United States.'" *Cantero v. Bank of Am.*, ___ F.4th ___ (2d Cir. 2022), 2022 WL 4241359, at *2 (quoting *Davis v. Elmira Sav. Bank*, 161 U.S. 275, 283 (1896)).

The NBA grants national banks the authority "[t]o exercise … all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; … [and] by loaning money on personal security." 12 U.S.C. § 24. An "incidental power" is one that "is convenient or useful in connection with the performance of one of the bank's established activities pursuant to its express powers under the National Bank Act." *Arnold Tours, Inc. v. Camp*, 472 F.2d 427, 432 (1st Cir. 1972). The NBA expressly authorizes national banks to engage in real estate lending. 12 U.S.C. § 371(a). As such, a national bank's "incidental powers" include the provision of mortgage escrow account services. *See*

4

*Cantero*, 2022 WL 42413549 at *9; *see also* OCC, Interpretive Letter No. 1041, 2005 WL 3629258, at *2 (Sept. 28, 2005); OCC, Corporate Decision, 1999 WL 74103, at *2 (Jan. 29, 1999); OCC, Conditional Approval No. 276, 1998 WL 363812, at *9 (May 8, 1998).

The NBA includes no requirement that national banks pay interest on mortgage and escrow accounts. Pursuant to OCC regulations, "[a] national bank may make real estate loans … without regard to state law limitations concerning: … Escrow accounts, impound accounts, and similar accounts." 12 C.F.R. § 34.4(a)(6).

### B. Rhode Island General Laws § 19-9-2(a)

Rhode Island law does, however, in most cases, require the payment of interest on mortgage escrow accounts. R.I.G.L. § 19-9-2(a) provides in relevant part that

> Every mortgagee holding funds of a mortgagor in escrow for the payment of taxes and insurance premiums with respect to mortgaged property located in this state shall pay or credit interest on those funds at a rate equal to the rate paid to the mortgagee on its regular savings account, if offered, and otherwise at a rate not less than the prevailing market rate of interest for regular savings accounts offered by local financial institutions….

### C. Preemption

Under the Supremacy Clause of the United States Constitution "the Laws of the United States … shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. State laws can be preempted in three ways: (1) "express preemption," when there is specific preemption language in a federal statute; (2) "field preemption," when it can be discerned from

the statutory scheme that Congress intended to leave no room for state law on the same subject; and (3) "conflict preemption," when compliance with state and federal law is a "physical impossibility, or when compliance with the state statute would frustrate the purposes of the federal scheme." *SPGGC, LLC v. Ayotte*, 488 F.3d 525, 530-31 (1st Cir. 2007) (quoting *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 31 (1996)). This matter concerns conflict preemption.

"The Supreme Court has consistently recognized [the NBA's] grant of incidental powers as a 'grant[] of authority not normally limited by, but rather ordinarily pre-empting, contrary state law." *Id.* at 531. The NBA preempts state laws that "prevent or significantly interfere with the national bank's exercise of its powers." *Barnett Bank*, 517 U.S. at 33; *see also SPGGC*, 488 F.3d at 531 (holding that "a state law may be preempted by the National Bank Act when it frustrates or limits the ability of a national bank to exercise its statutorily granted powers") (citing *Barnett Bank*, 517 U.S. at 33-34).

Through the Dodd-Frank Act, which took effect on July 21, 2011, Congress codified—but did not change—the NBA preemption standard set forth by the Supreme Court in *Barnett Bank*. In relevant part, the Dodd-Frank Act provides:

> State law preemption standards for national banks and subsidiaries clarified:
> 
> …
> 
> (b) Preemption standard.
> 
> > (1) In general. State consumer financial laws are preempted, only if –

> (A) Application of a State consumer financial law would have a discriminatory effect on national banks, in comparison with the effect of the law on a bank chartered by that State;
>
> (B) in accordance with the legal standard for preemption in the decision of the Supreme Court of the United States in *Barnett Bank of Marion Country, N.A. v. Nelson, Florida Insurance Commissioner, et al.*, 517 U.S. 25 (1996), the State consumer financial law prevents or significantly interferes with the exercise by the national bank of its powers; and any preemption determination under this subparagraph may be made by a court, or by regulation or order of the Comptroller of the Currency on a case-by-case basis, in accordance with applicable law ….

12 U.S.C. § 25b.

Applying the *Barnett Bank* preemption principles, the First Circuit, in *SPGGC*, considered a New Hampshire law that prohibited the sale of gift cards valued at $100 or less that contain expiration dates or administrative fees. 488 F.3d at 528. In that case, a national bank marketed and sold gift cards that contained expiration dates and were subject to administrative fees. *Id.* at 529. The court determined that under the NBA, banks have the incidental power to sell gift cards. *Id.* at 531-32. The court then considered whether the New Hampshire statute "frustrates or limits the ability of a national bank to exercise its statutorily granted powers." *Id.* at 531. The court concluded that because the New Hampshire law placed conditions on national banks' ability to sell gift cards, the law "significantly interferes" with the national bank's statutory powers and therefore was preempted by the NBA.[3] *Id.* at 533.

---

[3] Another case also is instructive. In *First Federal Savings and Loan Association of Boston v. Greenwald*, 591 F.2d 417, 419 (1st Cir. 1979), the First Circuit concluded that the federal Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461, et seq., which

R.I.G.L. § 19-9-2(a), like the New Hampshire law in *SPGGC*, places "limits" on an incidental power; here, the power to establish escrow accounts. These limitations therefore "significantly interfere" with a national banks' incidental powers to utilize mortgage escrow accounts. *See SPGGC*, 488 F.3d at 533; *see also Cantero*, 2022 WL 4241359, at *9 (holding that a state interest-on-escrow statute was preempted because "[b]y requiring a bank to pay its customers in order to exercise a banking power granted by the federal government, the law would exert control over banks' exercise of that power").

But there is an additional wrinkle. The Dodd-Frank Act also included an amendment to the Truth in Lending Act, effective January 21, 2013, that provides as follows:

> If prescribed by applicable State or Federal law, each creditor shall pay interest to the consumer on the amount held in any impound, trust, or escrow account that is subject to this section in the manner as prescribed by that applicable State or Federal law.

15 U.S.C. § 1639d(g)(3)

This provision, however, only governs loans where (1) state or federal law requires the establishment of an escrow account; (2) the loan is "made, guaranteed, or insured by a State or Federal governmental lending or insuring agency"; (3) the

---

governs federal savings and loan associations, preempted the Massachusetts interest-on-escrow statute. Pursuant to the authority granted to it under the HOLA, the Federal Home Loan Bank Board promulgated a regulation setting forth the circumstances under which federal savings and loan associations were required to pay interest on escrow accounts. *Id.* at 425. The First Circuit held that as a result of this regulation, HOLA preempted Massachusetts' interest-on-escrow statute. *Id.* at 425-26.

loan is a "jumbo" mortgage; or (4) regulations require the establishment of an escrow account. 15 U.S.C. § 1639d(b)(1) – (4). The plaintiff's mortgage falls into none of these categories and, indeed, the plaintiff acknowledges that he makes no claim for violation of 15 U.S.C. § 1639d.

But the plaintiff argues that § 1639d evinces a congressional intent for an abrogation of NBA preemption of state interest-on-escrow laws generally. The defendant, for its part, argues that § 1639d, which does not mention preemption, does nothing to eliminate NBA preemption of state interest-on-escrow laws.

The Court finds neither position well-grounded. The plaintiff's position is too broad. The plain language of § 1639d does not express congressional intent to impose an exception to NBA preemption for all mortgage loans; rather, it created an exception for the select group to which it applies. *See Cantero*, 2022 WL 4241359 at \*12 ("[I]t is much more harmonious to read the NBA together with Dodd-Frank as a decision by Congress to carve out an exception from its general rule, rather than expressly imposing a burden on some mortgage loans in order to impliedly impose a burden on all of them.") (quotation omitted). The defendant's position, on the other hand, is too broad in the opposite fashion—it ignores the carved-out exceptions entirely.

Because the plaintiff's mortgage loan is not of the types subject to §1639d, that statute is irrelevant to this case, and it serves only as an indicator of congressional intent with respect to the types of loans that it covers. The general rule of NBA preemption instead applies, and here preempts R.I.G.L. § 19-9-2(a).

Finally, Citizens argues that the fact that plaintiff seeks to represent a multi-state class asserting claims under various state interest-on-escrow laws is another ground for finding preemption. *See* ECF No. 17 at 10-11 (citing *Watters*, 550 U.S. at 13-14 (holding that national banks should be independent of "limitations and restrictions as various and as numerous as the States")). But here no class has been certified and the Court considers only the Rhode Island statute upon which the sole plaintiff before it claims a violation. *See Lawson v. FMR LLC*, 554 F. Supp. 3d 186, 192 (D. Mass. 2021) ("It is well within a district court judge's discretion to dispose of a motion to dismiss before acting on class certification.")

## IV.  CONCLUSION

The plaintiff has not set forth plausible claims for breach of contract or unjust enrichment for Citizens' alleged violation of R.I.G.L. § 19-9-2(a) because, except for loan types not at issue here, that statute is preempted by the National Bank Act. Accordingly, Citizens' Motion to Dismiss (ECF No. 15) is GRANTED.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge

September 28, 2022